In re Rosalind Ann BLAKELY, Debtor.

**Andrew W. Suhar, Chapter 7 Trustee, Plaintiff,**

v.

**Agree Auto Services, Inc., Defendant.**

Bankruptcy No. 12–40903.
Adversary No. 12–4100.

United States Bankruptcy Court,
N.D. Ohio.

June 18, 2013.

Andrew W, Suhar, Youngstown, OH, pro se.

Elizabeth H. Farbman, Roth, Blair, Roberts, Strasfeld, Lodge LPA, Youngstown, OH, for Defendant.

## MEMORANDUM OPINION REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on (i) Motion for Summary Judgment ("Plaintiff's Motion") (Doc. # 12) filed by Andrew W. Suhar, Chapter 7 Trustee ("Trustee"), on March 25, 2013; and (ii) Motion of Defendant, Agree Auto Services, Inc., for Summary Judgment ("Defendant's Motion") (Doc. # 11) filed by Defendant Agree Auto Services, Inc. ("Agree Auto") on March 25, 2013. On April 8, 2013, Agree Auto filed Defendant, Agree Auto Services, Inc.'s Response to Plaintiff's Motion for Summary Judgment ("Defendant's Response") (Doc. # 15). Also on April 8, 2013, the Trustee filed Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response") (Doc. # 16). Agree Auto filed Defendant, Agree Auto Services, Inc.'s Reply to Trustee's Response to Defendant's Motion for Summary Judgment ("Defendant's Reply") (Doc. # 17) on April 15, 2013. The Trustee did not file a reply to Defendant's Response. For the reasons set forth herein, the Court will (i) grant Plaintiff's Motion; and (ii) deny Defendant's Motion.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (Gen. Order No. 2012–7) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2)(K). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Debtor Rosalind Ann Blakely filed a voluntary petition pursuant to chapter 7 of Title 11, United States Code, on April 15, 2012 ("Petition Date"). Mr. Suhar was appointed the Chapter 7 Trustee.

On August 15, 2012, the Trustee filed Complaint Avoiding Preference ("Complaint") (Doc. # 1), which commenced the instant adversary proceeding. In the Complaint, the Trustee alleges that the Debtor paid Agree Auto the amount of $4,842.15 within ninety days of the Petition Date ("Preference Period") (Compl. ¶ 3). The Trustee further argues that such payment (i) was made for the benefit of Agree Auto (*id.* ¶ 4); (ii) was made on account of an antecedent debt (*id.* ¶ 5); (iii) was made while the Debtor was insolvent (*id.* ¶ 6); and (iv) enabled Agree Auto to receive more than it would have received if the transfer had not been made and Agree Auto instead received payment as a creditor under chapter 7 of the Bankruptcy Code (*id.* ¶ 7). Accordingly, the Trustee asserts that the $4,842.15 payment from the Debtor to Agree Auto is an avoidable preference pursuant to 11 U.S.C. § 547(b). (*Id.* ¶ 8.)

On September 6, 2012, Agree Auto filed Answer (Doc. # 6). In the Answer, Agree Auto admits that it received a payment or payments from the Debtor during the Preference Period but claims that the payments arose from the Debtor's purchase of a new vehicle. (Ans. ¶ 3.) Thus, Agree Auto contends that the payments it received from the Debtor are not subject to the Trustee's avoidance powers as contemporaneous exchanges for new value pursuant to 11 U.S.C. § 547(c)(1).[1] (*See, e.g., id.* ¶¶ 6, 11.)

On March 4, 2013, the parties jointly filed Stipulation of Fact ("Stipulation") (Doc. # 10), attached to which as Exhibit A is Retail Purchase Agreement ("Purchase Agreement") dated January 18, 2012, by and between the Debtor and Agree Auto.[2] The parties set forth the following facts in the Stipulation:

(1) On January 18, 2012, the Debtor purchased a 1998 Buick LaSabre ("New Vehicle") from Agree Auto, as evidenced by the Purchase Agreement. (Stip. ¶ 1.)

(2) The Purchase Agreement lists a trade-in vehicle, a 2001 Dodge Stratus ("Trade-in Vehicle"), "with a balance owed of $4,842.15 and a trade-in allowance of $1.00 because the vehicle was involved in an accident and was a total loss. The Debtor had let her insurance lapse." (*Id.* ¶ 2.)

---

**1.** Agree Auto also asserts in the Answer that the payments are not avoidable because (i) the payments were for debt incurred by the Debtor in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2); and (ii) Agree Auto gave subsequent new value to the Debtor that is not secured by an otherwise unavoidable security interest pursuant to 11 U.S.C. § 547(c)(4). (Ans. ¶¶ 12–13.) Agree Auto does not pursue these arguments in Defendant's Motion. Accordingly, the Court will address only whether the transfer was a con-

temporaneous exchange for new value pursuant to 11 U.S.C. § 547(c)(1).

**2.** A redacted version of the Purchase Agreement is also attached to the Stipulation. Because there are no material differences between the redacted and unredacted versions of the Purchase Agreement, the Court will refer to both filings as the Purchase Agreement.

(3) The Debtor owed Agree Auto $4,842.15 for the Trade-in Vehicle. (*Id.* ¶ 3.)

(4) The Debtor purchased the New Vehicle from Agree Auto for the amount of $6,488.00. The $4,842.15 owed to Agree Auto for the Trade-in Vehicle was included with the purchase price of the New Vehicle. (*Id.* ¶ 4.)

(5) The Debtor paid $3,518.50 ("Payment") toward the total amount of $11,970.99 [3] owed, resulting in a balance of $8,452.49 due and owing from the Debtor to Agree Auto. (*Id.* ¶ 5.)

The parties further stipulate that the Debtor and Agree Auto entered into the Purchase Agreement during the Preference Period and that the Debtor made the Payment to Agree Auto within the Preference Period. (*Id.* ¶¶ 6–7.)

### A. Plaintiff's Motion

The Trustee summarily argues in Plaintiff's Motion that the elements of an avoidable preferential transfer under § 547(b) are met with respect to the Payment of $3,518.50 [4] from the Debtor to Agree Auto. The Trustee asserts that the Payment was made on account of an antecedent debt owed to Agree Auto within the Preference Period. Relying on his Affidavit ("Trustee's Affidavit"),[5] the Trustee also contends, based upon the Debtor's assets and liabilities, that (i) the Debtor was insolvent on the Petition Date; and (ii) Agree Auto received more than it would have if the Payment was not made and Agree Auto was instead an unsecured creditor in the

underlying bankruptcy proceeding. (Trustee's Aff. ¶¶ 2–3.) Accordingly, the Trustee seeks judgment as a matter of law against Agree Auto in the amount of the Payment.

### B. Defendant's Motion

In Defendant's Motion, Agree Auto argues that the Trustee may not avoid the Debtor's Payment of $3,518.50 to Agree Auto because the Payment was a contemporaneous exchange for new value pursuant to § 547(c)(1). According to Agree Auto, the Debtor made the Payment as a delayed down payment on the New Vehicle. The Debtor's acquisition of the New Vehicle from Agree Auto was thus intended to be—and, in fact, was—contemporaneous with the Payment to Agree Auto.

Agree Auto argues that the documents memorializing the Debtor's purchase of the New Vehicle indicate the parties' intent to effectuate a contemporaneous exchange for new value. First, Agree Auto maintains that the Purchase Agreement lists the total purchase price for the New Vehicle as $11,970.99 and itemizes the Payment as a "Pick-up Payment." The Purchase Agreement likewise reflects the amount of $8,452.49 due and owing from the Debtor to Agree Auto after the Debtor's Payment.

Agree Auto also proffers two documents not addressed in the Stipulation, which were purportedly executed by the Debtor on January 18, 2012, in conjunction with the Debtor's purchase of the New Vehicle. The first document, entitled I Promise to Pay ("Promise to Pay"), characterizes the Payment as a "delayed down payment . . .

---

**3.** In addition to the purchase price and balance owed on the Trade-in Vehicle, the amount of $11,970.99 includes miscellaneous fees and closing costs.

**4.** Although the Trustee seeks to recover the amount of $4,842.15 in the Complaint's pray-

er for relief, he subsequently adjusts this amount to $3,518.50 in Plaintiff's Motion to reflect the stipulated amount that the Debtor actually paid to Agree Auto. (*See* Stip. ¶ 5.)

**5.** The Trustee's Affidavit is attached as Exhibit B to Plaintiff's Motion.

in addition to [the Debtor's] regular payments" and reflects the Debtor's agreement to pay Agree Auto the Payment on or before February 1, 2012.[6] The Promise to Pay also provides that Agree Auto could declare a default and repossess the New Vehicle if the Debtor failed to make the Payment by February 1, 2012. The second document, entitled Retail Installment Contract and Security Agreement ("Installment Contract"), reflects the Debtor's agreement to purchase the New Vehicle from Agree Auto, finance the principal amount of $8,452.49, and make bi-weekly payments for the New Vehicle until paid in full.[7] Based on these documents,[8] Agree Auto argues that the parties intended a contemporaneous exchange of the Payment for the New Vehicle.

Finally, Agree Auto argues that the Payment is not avoidable under § 547(b) because the Payment did not enable it to receive more than it would have as a creditor in this bankruptcy proceeding. Agree Auto maintains that it would not have sold the New Vehicle to the Debtor and would still own the New Vehicle if the Debtor never made the Payment. Accordingly, Agree Auto urges the Court to deny Plain-

tiff's Motion and enter judgment in its favor.

### C. Plaintiff's Response

In Plaintiff's Response, the Trustee again argues that he meets the elements of an avoidable transfer under § 547(b). First, the Trustee contends that the Debtor is presumed insolvent during the Preference Period pursuant to § 547(f) and that Agree Auto has presented no evidence to rebut this presumption.

The Trustee further maintains that the Payment was on account of an antecedent debt because the purchase price for the New Vehicle was only $6,931.34,[9] not $11,773.49, as Agree Auto contends. Rather, the difference of $4,842.15 between these two figures represents the balance owed on the Trade-in Vehicle, which debt was incurred before the Debtor purchased the New Vehicle. The Installment Contract also lists the down payment amount as $0 and the Total Net Cash/Trade-in as -$1,323.65, representing the difference between the amount owing on the Trade-in Vehicle and the Payment. Thus, the Trustee argues that the Payment was applied toward the Debtor's out-

---

**6.** A copy of the Promise to Pay is attached as Exhibit 1 to Defendant's Motion.

**7.** A copy of the Installment Contract is attached as Exhibit 2 to Defendant's Motion.

**8.** "Generally, to be considered by the court at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." *Gold v. Lippincott–Ace Elec. Co. (In re GOE Lima, LLC)*, Adv. No. 10–3299, 2012 WL 4468530, *1 n. 1, 2012 Bankr.LEXIS 4484, *3–4 n. 1 (Bankr.N.D.Ohio Sept. 25, 2012) (internal quotations and citations omitted). Although Exhibits 1 and 2 to Defendant's Motion are not properly authenticated pursuant to Federal Rules of Evidence 901 and 902, the Trustee does not formally object to the

documents and relies on them in Plaintiff's Response. Therefore, the Court may consider Exhibits 1 and 2 to Defendant's Motion in ruling on the cross-motions for summary judgment. *See id.*, 2012 WL 4468530, *1, 2012 Bankr.LEXIS 4484, *4 (citing *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 90 (6th Cir.1993)).

**9.** The parties stipulate that the purchase price for the New Vehicle was $6,488.00. The amount of $6,931.34 cited by the Trustee reflects the stipulated purchase price plus sales tax of $443.34 as evidenced by the Purchase Agreement. Because the parties stipulate to the authenticity of the Purchase Agreement, the Court will reference the amounts of $6,488.00 and $6,931.34 interchangeably as the purchase price of the New Vehicle.

standing balance on the Trade-in Vehicle and was on account of an antecedent debt.

The Trustee also contends that Agree Auto received, through the Payment, more than it would have as an unsecured creditor in this bankruptcy proceeding. According to the Trustee, Agree Auto was not entitled to assert its *in personam* rights to collect the balance owed on the Trade-in Vehicle because the Debtor filed for chapter 7 bankruptcy protection. Rather, because the Trade-in Vehicle was totaled while uninsured and had no value, Agree Auto was an unsecured creditor for the entire balance of $4,842.15 that the Debtor owed on the Trade-in Vehicle. Thus, Agree Auto's receipt of the Payment enabled it to receive more than it would have as an unsecured creditor in the Debtor's chapter 7 proceeding.

Finally, the Trustee asserts that the Payment was not a contemporaneous exchange for new value because the Debtor received nothing of equivalent value in exchange for the Payment. To the contrary, the only thing that the Debtor received was the New Vehicle, which was valued at $6,931.34, *i.e.,* the purchase price. The Trustee thus maintains that the amount due and owing on the Trade-in Vehicle was in addition to the cost of the New Vehicle, not a part thereof. In this regard, the Trustee argues that the transaction between the Debtor and Agree Auto does not further the purpose of the contemporaneous exchange defense, which is to encourage creditors to continue to deal with financially distressed debtors. Accordingly, the Debtor's Payment toward the balance owed on the Trade-in Vehicle was not a contemporaneous exchange for new value and may be avoided under § 547(b).

### D. Defendant's Response and Reply

Defendant's Response to Plaintiff's Motion incorporates by reference the arguments contained in Defendant's Motion. Accordingly, the Court will not separately summarize the arguments contained in Defendant's Response.

In Defendant's Reply, Agree Auto proffers Affidavit of Stacey M. Gardner ("Gardner Affidavit"),[10] who is the General Manager of Agree Auto. (Gardner Aff. ¶ 1.) The Gardner Affidavit states that Agree Auto's sale and financing of the New Vehicle to the Debtor was conditioned upon receipt of the Payment, which was explained to the Debtor in the Installment Contract and Promise to Pay. (*Id.* ¶ 3.) The Gardner Affidavit also asserts that Agree Auto would not have sold the New Vehicle or financed its sale to the Debtor if the Debtor did not make the Payment. (*Id.* ¶ 4.)

### II. STANDARD FOR REVIEW

The procedure for granting summary judgment is governed by Federal Rule of Civil Procedure 56(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. *See* FED. R. BANKR.P. 7056 (West 2013). Rule 56(a) states, in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (West 2013). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d

10. An unsigned version of the Gardner Affidavit is attached as Exhibit 1 to Defendant's Reply. A signed and notarized version of the Gardner Affidavit was filed as a separate document on April 15, 2013. (*See* Doc. # 18.)

Because there are no material differences between the signed and unsigned versions of the Gardner Affidavit, the Court will refer to both filings as the Gardner Affidavit.

265 (1986). A fact is material if it could affect the determination of the underlying action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine if a rational trier of fact could find in favor of either party on the issue. *Id.* at 248–49, 106 S.Ct. 2505; *SPC Plastics Corp. v. Griffith (In re Structurlite Plastics Corp.),* 224 B.R. 27, 30 (6th Cir. BAP 1998). Thus, summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In a motion for summary judgment, the moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. In response to a proper motion for summary judgment, the nonmoving party must present evidence upon which a reasonable trier of fact could rule in its favor. *Id.* at 252, 106 S.Ct. 2505. The evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where the parties have filed cross-motions for summary judgment, each motion must be evaluated on its own merits and inferences must be drawn against the party whose motion is being considered. *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 463 n. 6 (6th Cir. 1999) (citations omitted).

### III. LEGAL STANDARD AND ANALYSIS

#### A. Avoidable Preference Under § 547(b)

Section 547(b) permits a trustee to avoid certain transfers of a debtor's interest in property made for the benefit of a particular creditor. Specifically, § 547(b) provides:

(b) Except as provided in subsection[ ] (c) . . . of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (West 2013).

 Condensed, the plaintiff must demonstrate that the transfer was "(1) to benefit a creditor; (2) on account of antecedent debt; (3) made while the debtor was insolvent; (4) made within the applicable preference period; and (5) enabled the creditor to receive a larger share of the estate than the creditor would otherwise

receive." *Silagy v. Jay's Auto Sales, Inc. (In re Jackson)*, Adv. No. 06–6082, 2006 WL 3064087, *2, 2006 Bankr.LEXIS 2955, *6 (Bankr.N.D.Ohio Oct. 23, 2006) (citing *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir.1996)). The Trustee bears the burden of proving avoidability under § 547(b) by a preponderance of the evidence. *See* 11 U.S.C. § 547(g); *see also Hunter v. Dupuis (In re Dupuis)*, 265 B.R. 878, 881 (Bankr.N.D.Ohio 2001).

### 1. To Benefit a Creditor

The Bankruptcy Code defines a creditor as any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10)(A) (West 2013). Because the Debtor owed Agree Auto $4,842.15 for the Trade-in Vehicle, (*see* Stip. ¶ 3), Agree Auto had a claim against the Debtor that arose before the Petition Date. Agree Auto admits in its Answer that "it received payment(s) from the Debtor during the Preference Period...." (Ans. ¶ 3.) Likewise, the parties stipulate that the Debtor paid the Payment in the amount of $3,518.50 to Agree Auto. (Stip. ¶¶ 5, 7.) Under these circumstances, Agree Auto plainly was a creditor of the Debtor and benefited from receipt of the Debtor's Payment. As such, the Trustee has established the first element of an avoidable transfer under § 547(b).

### 2. On Account of Antecedent Debt

 Although the Bankruptcy Code does not define antecedent debt, a debt is antecedent if it was incurred before the allegedly preferential transfer. *Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 464 (6th Cir.2008). A debt is incurred when the debtor becomes legally obligated to pay. *See Lingham Rawlings, LLC v. Gaudiano (In re Ling-*

*ham Rawlings, LLC)*, Adv. No. 10–3125, 2013 WL 1352320, *15–16, 2013 Bankr.LEXIS 1333, *43–44 (Bankr. E.D.Tenn. Apr. 3, 2013) (collecting cases). In the context of a loan, the borrower incurs the debt when the lender disburses the loan proceeds. *See Burks v. Mortg. Elec. Registration Sys. (In re Pendergrass)*, 365 B.R. 833, 834 (Bankr.S.D.Ohio 2007) (citing *Spradlin v. Inez Deposit Bank (In re Lowe)*, 92 Fed.Appx. 129, 132 (6th Cir.2003)).

In the instant case, the parties stipulate that "[t]he Debtor owed Defendant $4,842.15 for the 2001 Dodge Stratus which was a trade-in to Defendant's automobile dealership." (Stip. ¶ 3.) The Debtor incurred this obligation when Agree Auto originally financed the Debtor's purchase of the Trade-in Vehicle. As such, the Debtor's duty to repay Agree Auto for the Trade-in Vehicle necessarily arose prior to the Debtor's purchase of the New Vehicle. Although Agree Auto attempts to characterize the $4,842.15 due and owing on the Trade-in Vehicle as part of the purchase price for the New Vehicle, the Purchase Agreement and Installment Contract unequivocally list the purchase price for the New Vehicle as $6,931.34.

Moreover, as evidenced by the Installment Contract, Agree Auto applied the Debtor's Payment toward the balance owed on the Trade-in Vehicle, not her purchase of the New Vehicle. The Installment Contract lists the down payment amount as $0 and the Total Net Cash/Trade-in as -$1,323.65—*i.e.,* the difference between the balance owed on the Trade-in Vehicle ($4,842.15) and the Payment ($3,518.50). Agree Auto does not refute that it required the Debtor to pay off the Trade-in Vehicle in order to purchase the New Vehicle. Indeed, the Gardner Affidavit establishes that Agree Auto would not have sold the New Vehicle to the Debtor

absent the Payment. (*See* Gardner Aff. ¶ 4.) Thus, the Payment toward the Debtor's outstanding balance on the Trade-in Vehicle was on account of an antecedent debt.

### 3. Made While the Debtor Was Insolvent

■ The Bankruptcy Code establishes a rebuttable presumption that a debtor is insolvent "on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f) (West 2013). The party against whom the presumption exists must come forward with some evidence to rebut the presumption. *See Spradlin v. Baker (In re Foley)*, Adv. No. 10–05029, 2010 WL 3905987, *2, 2010 Bankr.LEXIS 3443, *4 (Bankr.E.D.Ky. Sept. 30, 2010).

In the Trustee's Affidavit, the Trustee avers, "[b]ased upon the assets and liabilities of the debtor, the debtor was insolvent at the time of the bankruptcy filing." (Trustee's Aff. ¶ 2.) Agree Auto does not contest the Debtor's insolvency. Absent evidence to rebut the presumption, the Court thus relies on the presumption and finds that the Trustee has established the Debtor's insolvency for purposes of § 547(b)(3).

### 4. Made Within the Applicable Time Period

The Debtor's petition was filed on April 15, 2012—the Petition Date. The parties stipulate that the Payment was made within the 90–day period preceding the Petition Date. (Stip. ¶ 7.) Accordingly, the Trustee has satisfied the fourth element of § 547(b).

### 5. Enabling the Creditor to Receive More

■ Finally, the fifth element of a preference action requires the trustee to establish that the transfer enabled the recipient to receive more than it would have as a creditor in the debtor's chapter 7 proceeding. In making this determination, a court must consider the liquidation value of the debtor's assets on the petition date. *Lyndon Prop. Ins. Co. v. E. Ky. Univ.*, 200 Fed.Appx. 409, 419 (6th Cir.2006). The defendant's status as a secured or unsecured creditor is also paramount to a § 547(b)(5) analysis. *See Silagy v. Jay's Auto Sales, Inc. (In re Jackson)*, Adv. No. 06–6082, 2006 WL 3064087, *3, 2006 Bankr.LEXIS 2955, *9 (Bankr.N.D.Ohio Oct. 23, 2006).

■ A secured creditor in a chapter 7 proceeding is generally entitled (i) to receive consideration equal to the value of its collateral; or (ii) to recover its collateral. *See Yoppolo v. Comerica Bank (In re Norwalk Furniture Corp.)*, 428 B.R. 419, 425 (Bankr.N.D.Ohio 2009) (citing 11 U.S.C. §§ 506, 725). A prepetition transfer to a secured creditor provides such creditor with consideration that it is otherwise entitled to receive, negating any preferential treatment for purposes of § 547(b)(5). *See id.* (citation omitted). As such, "[p]ayments to a creditor who is *fully* secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation." *Triad Int'l Maint. Corp. v. S. Air Transp., Inc. (In re S. Air Transp., Inc.)*, 511 F.3d 526, 533 (6th Cir.2007) (emphasis added).

■ On the other hand, unsecured creditors in a chapter 7 bankruptcy rarely receive the full value of their claims. *In re Norwalk Furniture*, 428 B.R. at 425. Unsecured creditors are only entitled to receive a *pro rata* share of the debtor's nonexempt estate assets. *French v. State Farm Mut. Auto. Ins. Co. (In re LaRotonda)*, 436 B.R. 491, 496 (Bankr.N.D.Ohio 2010) (citing 11 U.S.C. § 726). "'Unless

the estate is sufficient to provide a 100% distribution, any unsecured creditor ... who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation.'" *Lyndon Prop. Ins.*, 200 Fed.Appx. at 419 (quoting *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 465 (6th Cir.1991)).

Agree Auto had an unsecured claim for the amount owed on the Trade-in Vehicle. Agree Auto lost its ability to enforce its security interest on the Trade-in Vehicle once the Trade-in Vehicle—*i.e.*, the collateral securing Agree Auto's prior retail installment loan to the Debtor—was totaled while uninsured. As an unsecured creditor, Agree Auto was entitled only to share *pro rata* with the Debtor's other unsecured creditors in any distribution of the liquidated estate under 11 U.S.C. § 726. However, Agree Auto $3,518.50 through the Payment, which the Trustee avers is more than Agree Auto would have received through liquidation of the Debtor's estate. (*See* Trustee's Aff. ¶ 3.) Thus, the Payment entitled Agree Auto to receive more than another unsecured creditor would receive had the transfer not been made.

In Defendant's Motion, Agree Auto argues that it did not receive more than it would have as an unsecured creditor because Agree Auto would not have sold the New Vehicle or financed its sale to the Debtor if the Debtor did not make the Payment. This argument misses the mark. If the Debtor did not purchase the New Vehicle, Agree Auto would have had only an unsecured claim for the balance owed on the Trade-in Vehicle as of the Petition Date. The Debtor's purchase of the New Vehicle thus did not alter (i) Agree Auto's status as an unsecured creditor with respect to the balance owed on the Trade-in Vehicle; or (ii) what Agree Auto would receive as an unsecured creditor in the Debtor's bankruptcy proceeding.

In the same way, even if Agree Auto had initiated a prepetition lawsuit against the Debtor to collect the amount owed on the Trade-in Vehicle, at most, Agree Auto would have had only an unsecured judgment debt on the Petition Date. The entry of a money judgment, standing alone, does not create a lien against the judgment debtor's property or otherwise give rise to a secured debt. *In re LaRotonda*, 436 B.R. at 495 (citing *Brandon v. Keaton*, 90 Ohio App.3d 542, 630 N.E.2d 17, 18 (1993)). Once the Trade-in Vehicle was totaled and no longer viable collateral to secure Agree Auto's prior retail installment loan to the Debtor, Agree Auto simply was not and could not become a secured creditor with respect to the balance owed on the Trade-in Vehicle. Agree Auto therefore received more through the Payment than other unsecured creditors in the Debtor's chapter 7 proceeding. Accordingly, the Trustee has satisfied the requirements of § 547(b)(5).

## B. Contemporaneous Exchange Defense Under § 547(c)

As set forth, *supra*, the Trustee has established all of the elements of an avoidable preferential transfer under § 547(b). Notwithstanding a debtor's prepetition transfer of property, however, a trustee may not avoid such transfer if it falls within one of the enumerated exceptions in § 547(c). Section 547(c) provides, in pertinent part:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a

contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange[.]

11 U.S.C. § 547(c)(1) (West 2013).

The exception for transfers made as a contemporaneous exchange for new value has three elements: " '(1) both debtor and creditor must intend the transfer to be a contemporaneous exchange; (2) the exchange must, in fact, be contemporaneous; and (3) the exchange must be for new value.' " *Silagy v. Jay's Auto Sales, Inc. (In re Jackson)*, Adv. No. 06–6082, 2006 WL 3064087, *4–5, 2006 Bankr.LEXIS 2955, *13–14 (Bankr.N.D.Ohio Oct. 23, 2006) (quoting *Field v. Lebanon Citizens Nat'l Bank (In re Knee)*, 254 B.R. 710, 714 (Bankr.S.D.Ohio 2000)). The party asserting that a transfer is not avoidable under § 547(c) has the burden of establishing the defense by a preponderance of the evidence. *See* 11 U.S.C. § 547(g); *see also Nathan v. Am. Med. Sec., Inc. (In re Advanced Sys. Int'l)*, 234 Fed.Appx. 398, 401 (6th Cir.2007) (applying § 547(g) to § 547(c)(2)).

Agree Auto may not avail itself of the contemporaneous exchange defense because it fails to establish at least two of the requisite elements for a contemporaneous exchange for new value. First, there is no evidence to suggest that the parties intended a contemporaneous exchange. In determining the parties' intent, a court may consider the parties' agreements, testimony and course of dealing. *Ganton Techs., LLC v. Chemtool, Inc. (In re Intermet Corp.)*, 372 B.R. 358, 365–66 (Bankr. E.D.Mich.2007).

The plain language of the Purchase Agreement and Installment Contract does not establish the parties' intent to effectuate a contemporaneous exchange for new value. Rather, both documents list the purchase price for the New Vehicle as $6,931.34, which does not include the balance owed on the Trade-in Vehicle. The Installment Contract further reflects that the Debtor's down payment was $0 and the Total Net Cash/Trade-in was -$1,323.65— *i.e.*, the difference between the balance owed on the Trade-in Vehicle ($4,842.15) and the Payment amount ($3,518.50). As such, the documents do not indicate that the parties intended a contemporaneous exchange of the Payment for the New Vehicle consistent with § 547(c)(1).

The stipulated facts further corroborate this understanding. The parties stipulate that (i) the Debtor owed Agree Auto $4,842.15 for the Trade-in Vehicle (*see* Stip. ¶ 3); (ii) the Debtor purchased the New Vehicle for the amount of $6,488.00 (*see id.* ¶ 4); (iii) the $4,842.15 owed to Agree Auto was added to the purchase price for the New Vehicle (*see id.*); and (iv) $8,452.49 remains due and owing under the Purchase Agreement (*see id.* ¶ 5). In other words, although the Debtor paid $3,518.50 to Agree Auto, that amount was not credited toward the Debtor's purchase of the New Vehicle but instead was used to reduce the amount owed on the Trade-in Vehicle.

Moreover, Agree Auto does not dispute that it required the Debtor to pay down the balance owed on the Trade-in Vehicle before purchasing the New Vehicle. Indeed, in the Gardner Affidavit, Ms. Gardner avers that Agree Auto would not have sold the New Vehicle or financed its sale to the Debtor if the Debtor did not make the Payment. (Gardner Aff. ¶ 4.) Accordingly, the evidence unequivocally demonstrates that the parties did not intend a contemporaneous exchange for new value with respect to the balanced owed on the Trade-in Vehicle.

Agree Auto's argument fails for the additional reason that the Debtor's

transfer of the Payment to Agree Auto did not occur for new value. "New value" is defined in § 547(a)(2) as:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

11 U.S.C. § 547(a)(2) (West 2013). New value for purposes of § 547(c)(1) must involve an exchange of tangible economic value. *See Walls v. United Furniture Indus., Inc. (In re Paradise Valley Holdings, Inc.),* No. 03–34704, 2006 WL 3691213, *3–4, 2006 Bankr.LEXIS 3466, *11 (Bankr. E.D.Tenn. Dec. 12, 2006). "This view is in keeping with the purpose new value serves: replenishing the estate." *Id.* (quoting *Phoenix Rest. Grp., Inc. v. Fuller, Fuller & Assocs., P.A. (In re Phoenix Rest. Grp., Inc.),* 316 B.R. 671, 679 (Bankr. M.D.Tenn.2004)).

Here, the Debtor received no new value in exchange for her Payment to Agree Auto. The parties stipulate that the purchase price for the New Vehicle was $6,488.00. (Stip. ¶ 4.) It is clear from the Purchase Agreement and Installment Contract that Agree Auto applied the Payment of $3,518.50 to the $4,842.15 due and owing on the Trade-in Vehicle, resulting in a Total Net Cash/Trade-in value of - $1,323.65. Although this negative equity was added to the purchase price of the New Vehicle, it did not somehow augment the intrinsic value of the New Vehicle. By way of illustration, if another individual without a prior existing debt to Agree Auto purchased the New Vehicle, that individual could obtain the New Vehicle for the listed price of $6,488.00, representing

the actual value of the New Vehicle. It is only because the Debtor owed the preexisting debt of $4,842.15 on the Trade-in Vehicle that she was charged the amount of $11,970.99 for the New Vehicle. Accordingly, the Debtor received no new value in exchange for her Payment.

■ Finally, the transaction between the Debtor and Agree Auto does not further the underlying purpose of the contemporaneous exchange defense. The contemporaneous exchange exception is designed "to encourage creditors to continue doing business with troubled debtors who may then be able to avoid bankruptcy altogether. In addition, this exception recognizes that the debtor's payment does not adversely affect other creditors because the payment is offset by the debtor's receipt of new value." *Stevenson v. Leisure Guide of Am., Inc. (In re Shelton Harrison Chevrolet, Inc.),* 202 F.3d 834, 837 (6th Cir.2000) (internal quotation and citation omitted). If the Debtor had not made the Payment to Agree Auto, there would be an additional $3,518.50 in the Debtor's estate potentially available for payment to unsecured creditors. Because the Debtor received no new value for the Payment, the Payment diminished the bankruptcy estate and adversely affected the Debtor's other unsecured creditors. Accordingly, the contemporaneous exchange defense is inapplicable, and the Trustee is entitled to avoid the Debtor's Payment to Agree Auto.

## IV. CONCLUSION

For the foregoing reasons, the Debtor's Payment of $3,518.50 to Agree Auto is an avoidable preferential transfer pursuant to § 547(b). The Trustee has established that the Payment (i) benefited Agree Auto; (ii) was made on account of an antecedent debt; (iii) was made while the Debtor was insolvent; (iv) was made within the Prefer-

ence Period; and (v) enabled Agree Auto to receive more than other unsecured creditors in the Debtor's bankruptcy proceeding.

Specifically, the Debtor made the Payment on account of an antecedent debt because the Payment reduced the balance owed on the Debtor's Trade-in Vehicle, which debt necessarily accrued prior to the Debtor's purchase of the New Vehicle. Likewise, the Payment entitled Agree Auto to receive more than its due as an unsecured creditor. Agree Auto bypassed the chapter 7 liquidation process, in which it would have shared *pro rata* with other unsecured creditors in any distribution of the Debtor's estate, and instead received $3,518.50 toward its unsecured claim. The parties stipulate to the remaining elements of § 547(b). As such, there is no genuine issue of fact that the transfer of the Payment to Agree Auto is preferential.

Finally, the contemporaneous exchange defense pursuant to § 547(c)(1) is inapplicable. The documents memorializing the Debtor's purchase of the New Vehicle demonstrate that the parties did not intend a contemporaneous exchange of the Payment for the New Vehicle. The Purchase Agreement and Installment Contract list the purchase price for the New Vehicle as $6,931.34, which does not include the balance owed on the Trade-in Vehicle. Additionally, the Debtor received no new value in exchange for her Payment to Agree Auto. Agree Auto applied the Payment toward the balance owed on the Trade-in Vehicle and not toward the Debtor's purchase of the New Vehicle.

Accordingly, the Trustee is entitled to avoid the Debtor's transfer of the Payment to Agree Auto. The Court will (i) grant Plaintiff's Motion; and (ii) deny Defendant's Motion.

An appropriate order will follow.

**IT IS SO ORDERED.**

**ORDER (i) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (ii) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on (i) Motion for Summary Judgment ("Plaintiff's Motion") (Doc. # 12) filed by Andrew W. Suhar, Chapter 7 Trustee ("Trustee"), on March 25, 2013; and (ii) Motion of Defendant, Agree Auto Services, Inc., for Summary Judgment ("Defendant's Motion") (Doc. # 11) filed by Defendant Agree Auto Services, Inc. ("Agree Auto") on March 25, 2013. On April 8, 2013, Agree Auto filed Defendant, Agree Auto Services, Inc.'s Response to Plaintiff's Motion for Summary Judgment ("Defendant's Response") (Doc. # 15). Also on April 8, 2013, the Trustee filed Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. # 16). Agree Auto filed Defendant, Agree Auto Services, Inc.'s Reply to Trustee's Response to Defendant's Motion for Summary Judgment (Doc. # 17) on April 15, 2013. The Trustee did not file a reply to Defendant's Response.

For the reasons set forth in this Court's Memorandum Opinion Regarding Cross–Motions for Summary Judgment entered on this date, the Court hereby:

1. Finds that the Payment: (i) benefited Agree Auto; (ii) was made on account of an antecedent debt; (iii) was made while the Debtor was insolvent; (iv) was made within the Preference Period; and (v) enabled Agree Auto to receive more than other unsecured creditors in the Debtor's bankruptcy proceeding;

2. Finds that the Trustee has established all of the elements of an avoidable preferential transfer under § 547(b) with respect to the

Debtor's Payment of $3,518.50 to Agree Auto;

3. Finds that the parties did not intend a contemporaneous exchange of the Payment for the New Vehicle;

4. Finds that the Debtor received no new value in exchange for her Payment to Agree Auto;

5. Finds that the contemporaneous exchange defense pursuant to § 547(c)(1) is inapplicable; and

6. Finds that the Trustee is entitled to avoid the Debtor's Payment of $3,518.50 to Agree Auto as a preferential transfer pursuant to § 547(b).

As a consequence, the Court hereby:

1. Grants Plaintiff's Motion; and

2. Denies Defendant's Motion.

**IT IS SO ORDERED.**